IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No: 20-cv-02241-NRN

JASON M. CARR,

Plaintiff,

v.

ANDREW SAUL, Commissioner of Social Security,

Defendant.

---

**OPINION AND ORDER**

---

**N. Reid Neureiter**
**United States Magistrate Judge**

The government determined that Plaintiff Jason M. Carr was not disabled

for purposes of the Social Security Act. AR[1] 30. Mr. Carr has asked this Court to

review that decision. The Court has jurisdiction under 42 U.S.C. § 405(g), and

both parties have agreed to have this case decided by a United States

Magistrate Judge under 28 U.S.C. § 636(c). Dkt. #17.

**Standard of Review**

In Social Security appeals, the Court reviews the decision of the

administrative law judge ("ALJ") to determine whether the factual findings are

supported by substantial evidence and whether the correct legal standards were

applied. *See Pisciotta v. Astrue,* 500 F.3d 1074, 1075 (10th Cir. 2007).

---

[1] All references to "AR" refer to the sequentially numbered Administrative
Record filed in this case. Dkt. ##14, and 14-1 through 14-8.

"Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Raymond v. Astrue*, 621 F.3d 1269, 1271–72 (10th Cir. 2009) (internal quotation marks omitted). The Court "should, indeed must, exercise common sense" and "cannot insist on technical perfection." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The Court cannot reweigh the evidence or its credibility. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

## Background

At the second step of the Commissioner's five-step sequence for making determinations,[2] the ALJ found that Mr. Carr had the severe impairments of multiple sclerosis ("MS"), mild lumbar spondylosis, right shoulder impingement, right lateral epicondylitis, and depressive disorder. AR 17. Mr. Carr's additional impairments of otitis media, otitis externa, and tobacco dependence were deemed non-severe. *Id.* The ALJ also noted that Mr. Carr was "diagnosed" with a number of "symptoms and provisional diagnoses" including cough, right wrist pain, right elbow pain, joint pain, excessive sweating, abnormality of gait, other back pain, cognitive deficits, abnormal MRI, provisional neurocognitive disorder,

---

[2] The Social Security Administration uses a five-step sequential process for reviewing disability claims. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988.) The claimant has the burden of proof through step four; the Social Security Administration has the burden of proof at step five. *Lax*, 489 F.3d at 1084.

urinary frequency, possible inflammatory arthritis versus triangular fibrocartilage,
weakly positive ANA, lumbar pain, diarrhea, and smoker. AR 18.

The ALJ determined at step three that Mr. Carr does not have an
impairment or combination of impairments that meets or medically equals the
severity of one of the listed impairments in the regulations. *Id.* Because he
concluded that Mr. Carr did not have an impairment or combination of
impairments that meets the severity of the listed impairments, the ALJ found that
Mr. Carr has the residual functional capacity ("RFC") to perform

> A reduced range of light work as defined in CFR 416.967(b) except
> the claimant can occasionally lift/carry 20 pounds and frequently
> lift/carry 10 pounds. He can stand and/or walk 2 hours and sit 6 hours
> of an 8-hour workday, and he must be permitted to use a cane for
> standing and walking. The claimant can never climb ladders, ropes
> or scaffolds, and he can occasionally balance, stoop, kneel, crouch
> crawl, or climb ramps and stairs. He can frequently reach, handle,
> finger, feel or operate hand controls with the right upper extremity.
> He can tolerate no more than occasional exposure to extreme heat,
> and he can have no exposure to hazards, including unprotected
> heights, operating heavy machinery, or commercial driving. He is
> limited to understanding, remembering, and carrying out no more
> than simple tasks and instructions, defined as those job duties that
> can be learned in up to 30 days' time. Finally, he cannot perform any
> fast-paced production work.

AR 20–21.

The ALJ found that Mr. Carr is unable to perform his past relevant work as
an electrician. AR 28. Considering Mr. Carr's age, education, work experience,
and RFC, the ALJ determined that there are other jobs that exist in significant
numbers in the national economy that he can perform, including callout operator,
toll collector, food order clerk, and surveillance system monitor. AR 29–30.
Accordingly, Mr. Carr was deemed not to have been under a disability from
August 14, 2017, through August 13, 2019, the date of the decision. AR 30.

## Analysis

Mr. Carr argues that the ALJ improperly weighed the medical opinion evidence and failed to properly consider Mr. Carr's impairments, and then substituted his own lay opinion when formulating the RFC. The Court disagrees.

First, Mr. Carr claims that the RFC is not supported by substantial evidence because the ALJ failed to appropriately evaluate the opinions offered by Dr. Enrique Alvarez, who treated Mr. Carr's MS, and Kristine Crouch, a registered occupational therapist. Effective March 27, 2017, the regulations changed the procedures and standards for evaluating evidence, including medical source opinions. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Because Mr. Carr filed his claim in August 2017, the ALJ correctly applied the revised regulations.

Under the old regulations, the opinions of treating sources were generally entitled to more weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Treating-source opinions were given "controlling weight" when they are "well supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent" with other substantial evidence in the record. *Id.* §§ 404.1527(c)(2), 416.927(c)(2); *see also Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

The new regulations set forth in 20 C.F.R. §§ 404.1520c and 416.920c abrogate the treating physician rule for claims filed on or after March 27, 2017. The Commissioner will no longer "defer or give any specific evidentiary weight,

including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner will consider the persuasiveness of each medical source's opinions using five factors: (1) supportability; (2) consistency; (3) relationship with the claimant (which encompasses the length of treatment relationship, frequency of examinations; purpose and extent of treatment relationship, and examining relationship); (4) specialization; and (5) other factors tending to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

The most important factors in evaluating persuasiveness are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). For supportability, "the strength of a medical opinion increases as the relevance of the objective medical evidence and explanations presented by the medical source increase." *Vellone v. Saul*, 120CV00261RAKHP, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021) (citing 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1)). Consistency, on the other hand, "is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." *Id.* (citing 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2)). The ALJ must explain his approach with respect to these factors when considering a medical opinion, but he is not required to expound on the remaining three unless the ALJ finds that two or more medical opinions or prior administrative medical findings about the

5

same issue are both equally well-supported and consistent with the record, but not identical. *Id.* §§ 404.1520c(b)(2)–(3), 416.920c(b)(2)–(3).

On June 11, 2019, Dr. Alvarez completed a questionnaire prepared by Mr. Carr's attorney by circling "yes" or "no" to nine questions. *See* AR 607–09. Dr. Alvarez answered yes when asked, "Due to his various symptoms and limitations, including fatigue, cognitive impairment, and significantly decreased tolerance of physical activity, do you think Mr. Carr would be off-task in a work environment for at least 25% of an 8-hour workday?" AR 609. He also agreed that Mr. Carr would need to leave early, arrive late, or be entirely absent from a work environment at least one day per week. *Id.*

The ALJ did not find Dr. Alvarez's opinion persuasive:

> I have also considered the June 11, 2019 interrogatory questionnaire from the claimant's representative completed by Enrique Alvarez, MD, PhD, and found it not persuasive. While Dr. Alvarez is a treating source, his answers largely recite the claimant's allegations or opine on what a typical MS patient might reasonably experience. The opinion cites no objective findings, the form itself did not allow Dr. Alvarez to provide his own opinion of the claimant's functional abilities, and the opinion is contrary to the evidence as a whole.

> While [sic] Dr. Alvarez's limitations are somewhat consistent with his June 10, 2019 treatment note, which reported increased subjective complaints. The record as a whole shows overall stable findings, as well as improved functional capacities. The claimant's motor strength has generally been normal, with 5/5 strength noted in most areas with the exception of strength in the right arm and one or both legs occasionally dropping to 4+/4 or 4/5. However, the record does not establish a consistent drop in motor strength over time. Rather, a slight decrease in strength is noted at one appointment, and then the claimant has normal strength at the next. Furthermore, the record notes good response to Ampyra with less falls and more stability as well as the ability to walk longer distances. Similar observations were noted six months later in June 2018, and six months after that in December 2018, where the record notes the claimant is doing housework and outside activities, walking to the

grocery store and to his son's school. I note that at the claimant's first physical therapy session in May 2019, the claimant reported no longer being able to walk his son to school. Despite this, physical examination findings noted no change in the claimant's lower extremities strength. Additionally, subsequent physical therapy records report the claimant "progressing in exercise tolerance." In short, the objective medical evidence does not support any durationally significant functional decline.

AR 27 (citations to the record omitted).

Mr. Carr argues that Dr. Alvarez's opinion was consistent with his treatment records and the treatment records of other medical providers, which demonstrate the severity and progressive worsening of Mr. Carr's symptoms. Moreover, while Mr. Carr admits that some of the questions put to Dr. Alvarez were related to MS in general, Dr. Alvarez also answered specific questions related to Mr. Carr's functioning. Finally, Mr. Carr notes the incongruity of the ALJ stating that Dr. Alvarez's opinion did not cite objective findings when, one sentence later, he states that "Dr. Alvarez's limitations are somewhat consistent with his June 10, 2019 treatment note[.]"

The Commissioner argues that Dr. Alvarez's opinion is not really an opinion at all as it is largely a recitation of symptoms Mr. Carr claims to have, and then asks Dr. Alvarez whether such symptoms are common in patients with MS. The Court agrees with the ALJ that Dr. Alvarez's "answers largely recite [Mr. Carr]'s allegations or opine on what a typical MS patient might reasonably experience." AR 27. To that extent, the opinion is of marginal worth as to Mr. Carr's specific functional abilities.

Dr. Alvarez did opine that Mr. Carr would be off-task for at least a quarter of every workday and would miss at least one day per week. AR 609. However,

Dr. Alvarez, whom Mr. Carr saw about twice a year for infusions, does not expound on or explain how he reached this conclusion, and the ALJ stated that it was not supported by or consistent with the evidence as a whole. AR 27. The ALJ goes on to cite from the record indicating that the objective medical evidence does not support any durationally significant functional decline. *Id.* Specifically, he notes evidence indicating that Mr. Carr's motor strength has generally been normal, although it fluctuates slightly; that medication has helped with Mr. Carr's balance and stability; and that he has been progressing with his physical therapy.

Although the Tenth Circuit has recognized that "multiple sclerosis is a devastating disease, and persons living with it face numerous difficulties," *Rudde v. Astrue*, 253 F. App'x 770, 775 (10th Cir. 2007), the Court must nonetheless apply the "established deferential standard of review of the agency's determination." *Id.* Here, the ALJ did find that Mr. Carr had significant limitations, just not to the degree that he could be considered disabled. Moreover, although MS "is an incurable, progressive disease subject to periods of remission and exacerbation," *id.* at 773, Mr. Carr must still show that it, combined with his other limitations, rendered him disabled during the relevant period. While this Court, were it to do its own independent assessment, may reach a different conclusion, the ALJ's determination regarding Mr. Carr's impairments, including MS, is supported by more than a scintilla of evidence.

Turning to the opinion of Ms. Couch, she, relying in part on Mr. Carr's "patient report," opined that Mr. Carr was limited to less than sedentary work as he could occasionally lift and carry up to 10 pounds and could never lift and carry

over 10 pounds. AR 528. She further opined that during an eight-hour day, Mr.

Carr can sit for 30 minutes at a time and two hours total, stand for one hour at a

time and two hours total, and walk for 15 minutes at a time and one hour total.

AR 529. Mr. Carr could rarely (up to 10 percent) reach, handle, finger, feel, and

push/pull bilaterally; never climb stairs, ramps, ladders, scaffolds, or balance;

rarely (up to 10 percent) stoop, kneel, crouch, and crawl; occasionally operate a

motor vehicle; and tolerate quiet noise. AR 528–32. Mr. Carr could not sort,

handle, or use papers/files; climb a few steps at a reasonable pace with the use

of a single hand rail; use standard public transportation; or walk a block at a

reasonable pace on rough or uneven surfaces. AR 532.

Like Dr. Alvarez, the ALJ was not persuaded by Ms. Couch's opinion on

Mr. Carr's limitations:

> I have considered the June 2018 functional capacity
> evaluation and medical opinion form completed by Kristine Couch,
> OTR, and found them not persuasive. Ms. Couch assessed a less
> than sedentary functional capacity further limited by a number of
> restrictions including an inability to perform and eight-hour workday.
> On the FCE report, she noted that the claimant was ["]no longer
> capable of securing [or] maintaining reliable employment in any
> capacity." This later statement is on an issue reserved to the
> Commissioner. In assessing this opinion, I note that Ms. Couch is not
> an acceptable medical source. Furthermore, her opinion is based
> solely on a one-time examination of the claimant, and not supported
> by objective findings. Ms. Couch relies on the claimant's effort put
> forth during testing and on his subjective allegations and complaints
> while trying many of the activities. This is significant because in many
> instances, the claimant discontinued or declined various tests. Ms.
> Couch's records are also inconsistent with other evidence. Four days
> before the FCE, the claimant was reporting Ampyra was helping
> "tremendously." Likewise, in December 2018, the claimant reported
> doing housework and outdoor activities including walking to the
> grocery store and to his son's school. Overall, I find Ms. Couch's
> opinion is inconsistent with her own report and unsupported by the
> records of the claimant's treating providers.

AR 26–27 (citations to the record omitted).

Again, while the Court may have given Ms. Couch's opinion greater weight than the ALJ did, it cannot say that the ALJ's rejection of the less-than-sedentary limitations found by Ms. Crouch is unsupported by substantial evidence. The fact that it was a one-time examination was appropriate for the ALJ to consider, although the length of exam (over four hours) militates against this being dispositive. Moreover, while Ms. Couch's report does include objective findings, her opinion was also based, at least in part, on Mr. Carr's subjective claims. The ALJ found those subjective claims to be "not entirely consistent with the severity of [his] allegations," given that Mr. Carr still mowed his lawn, pulled weeds, drove a car, and is the primary caretaker for his young son, which means he handles the household chores and grocery shopping. AR 22. The ALJ was permitted to bear these activities in mind when considering the various medical opinions, and the Court cannot say he erred when he found that such activities were inconsistent with Ms. Couch's opinion that Mr. Carr could not, for example, handle paper or files. Ms. Couch's opinion is also undermined to some extent by the objective medical evidence, discussed above, indicating that Mr. Carr had generally normal motor strength and that his walking and balance was improved by medication. While there is evidence favoring each side, the medical record does provide substantial evidence for the ALJ's determination that Mr. Carr's combined limitations did not render him disabled during the period at issue.

Finally, Mr. Carr contends that because the ALJ also rejected the medical opinions of the consultative examiner, Timothy Moser, MD, and state agency

consultant, Robert Pratt, MD, the RFC is unsupported by any medical opinion.

This argument is not persuasive.

The ALJ rejected the opinion of Dr. Moser, who opined that Mr. Carr could

perform work within the light range of exertion with no limitations on sitting, no

need for a cane, and to only limited postural activity. AR 26. The ALJ found that

"Dr. Moser underestimates claimant's overall functioning particularly with regard

to the need for a cane, and in the weakness and sensory issues of the claimant's

right lower extremity." *Id.* The ALJ similarly discounted Dr. Pratt's opinion that Mr.

Carr could, among other things, lift and carry 20 pounds occasionally and 10

pounds frequently, stand and walk for about 6 hours in an 8-hour workday, and

frequently climb ramps or stairs, balance, stoop, knee crouch, and crawl. AR 27.

The ALJ found Mr. Carr to be "more limited in almost every area assessed,"

particularly because Dr. Pratt did not address Mr. Carr's "need to use a cane,

which is widely noted in the evidence and supported by regular mention of

positive Romberg testing." *Id.*

Mr. Carr obviously does not challenge the ALJ's rejection of Dr. Moser and

Dr. Pratt's opinions. Instead, he claims that if the ALJ found every medical

opinion unpersuasive, any RFC he came up with was necessarily him playing

doctor and improperly substituting his own lay medical opinion. [3]

---

[3] For example, at the hearing in this matter, Mr. Carr's counsel argued that the ALJ's finding that Mr. Carr can "frequently reach, handle, finger, feel or operate hand controls with the right upper extremity" is unrelated to any evidence in the record. However, the ALJ explained in two places that this limitation is based on the medical record. *See* AR 23 ("In light of the evidence, I find that because of right shoulder impingement and right lateral epicondylitis, the claimant is limited to no more than frequent reaching, handling, fingering, feeling,

However, the regulations do not require that an ALJ adopt any particular medical opinion in order to formulate an RFC. *See Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) ("[T]there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question."). Instead, it is the ALJ's task, as the finder of fact, to weigh the evidence and come to a conclusion. *See Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) ("[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record."). The question on review is whether the ALJ's conclusion is supported by substantial evidence.

When confronted with conflicting evidence, the ALJ need not fully embrace either one. *See Smith v. Colvin*, 821 F.3d 1264, 1268 (10th Cir. 2016) (upholding approach of ALJ who "arrived at an assessment between the two medical opinions without fully embracing either one"). They instead may adopt a "middle ground." *Guillar v. Comm'r, SSA*, 845 F. App'x 715, 719 (10th Cir. 2021).

Mr. Carr contends that the ALJ did not actually adopt a middle ground because no medical opinion was found persuasive or given any weight. This is not a meaningful distinction. The Tenth Circuit has "reject[ed the] argument that there must be specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category." *Howard*, 379 F.3d at 949. Moreover, under the new regulations, the ALJ no longer "defer[s] or give[s] any specific evidentiary weight . . . to any

---

or operating hand controls with the right upper extremity"); AR 28 (reiterating the same).

medical opinion(s) . . . ." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). It is the ALJ's prerogative to weigh the medical evidence before him. *Guillar,* 845 F. App'x at 719. So long as the decision is supported by more than a scintilla of evidence, it will not be disturbed.

Here, the ALJ assessed the medical evidence and found that, "[i]n light of the generally normal physical examination findings, MRI imaging noting stable findings with no new lesions, and good response to medication allowing greater functioning, . . . the combined effect of multiple sclerosis and mild lumbar spondylosis reduce the claimant's ability to work, but he still retains" the ability to perform the reduced range of light work provided for in the RFC. AR 24. In reaching this conclusion, the ALJ discussed at length the persuasiveness and consistency of the medical opinions on record. This approach is permitted by Tenth Circuit authority and the ALJ's conclusion is supported by substantial evidence.

## Conclusion

For the reasons set forth above, the Commissioner's decision is **AFFIRMED** and Plaintiff's Complaint (Dkt. #1) is **DISMISSED**.

Dated this 22nd day of September, 2021.

BY THE COURT:

N. Reid Neureiter
United States Magistrate Judge

13